Frank A. Gulotta, J.
This is a consolidated action brought by Sossner-Lynbrook, Inc. as owner, and Sossner Tap & Tool Corp. as tenant of premises No. 27 Broadway, Lynbrook, New York, for damages resulting from an explosion caused by the negligence of the defendants.
Defendants, since 1949, have been in the business of cleaning cesspools. Plaintiff Tool Corporation had an agreement with defendant Hempstead Cesspool Co., Inc., whereby the latter was to care for the cleaning of the cesspool at the above premises. Defendant Butt was an officer and employee of the Hempstead Corporation.
On October 4, 1951, Butt and certain employees of the Hemp-stead Corporation were at the above premises to pump out the cesspool. Upon its completion Butt reported to a representative of the Tool Corporation that the work was done. Mention was made to Butt of the increasing frequency with which the cesspool had to be cleaned and it was suggested that perhaps the laborers could enter the cesspool and “clean deeper” or scrape more from the bottom. Butt explained this could not be done since lack of oxygen in the bottom of the cesspool made it impossible to breath. Butt said that he sensed an attitude of disbelief on the part of Mr. Flammia, the plant superintendent, whereupon he lighted a newspaper and started toward the cesspool saying he would prove there was no oxygen in the cesspool. Mr. Flammia asked if there was not danger of an explosion. Butt said there was not —that if there was no oxygen in the tank the flame would be extinguished; if there was oxygen, the flame would just burn itself out. As events were shortly to prove, this explanation did not exhaust all the possibilities. Flammia accompanied Butt to the edge of the cesspool; Butt threw in the burning paper; it seemed to burn for a while, then the flame seemed to go out and was followed immediately by a terrific explosion.
Dr. George E. Symons, a sanitary engineer of many years’ experience and outstanding qualifications, testified that matter which is found in a cesspool, by virtue of anaerobic decomposition, produces methane gas and carbon-dioxide principally and, in addition, other gases in small quantities. When mixed with air, if methane constitutes 5% to 15% of the entire volume, the *731 mixture becomes explosive wben raised to its ignition point. Such would be the case when a flaming newspaper is thrust into it. He further testified that to light anything near an open cesspool is dangerous and contrary to all the rules of safety. In his opinion the explosion was caused by the existence in the cesspool of methane gas in an explosive quantity ignited by the flame thrown into the pool by defendant Butt.
There was evidence that two 53-gallon drums of Sovasol were kept on the premises. It was shown too, that Sovasol is a proprietary product used for cleaning tools, having the general characteristics of gasoline.
At the conclusion of the entire case the attorney for the defendants conceded negligence but argued that the plaintiffs were contributorily negligent in that they improperly stored the Sovasol on the premises; that plaintiffs negligently permitted it to seep through the ground into the cesspool; that this is a volatile material; that they did not warn .the defendants of the existence of this liquid in the cesspool and that the explosion resulted from its presence in the pool at the time Butt threw the flame into it.
The court finds no credible evidence to support the basic premise in this argument, to the effect that Sovasoi seeped through the ground, and hence no foundation upon which an ultimate conclusion of contributory negligence can be based.
Giving to the defendants the most favorable interpretation of the evidence, the most that can be said is that there may have been occasional drippings of Sovasol from the spigot onto a dirt floor. There is no explanation or evidence to show how a volatile substance such as this could possibly remain in a liquid state long enough to soak through 10 feet of soil in order to reach the cesspool, even were it to have leaked in large quantities. Furthermore, as was clearly shown by Dr. Symons, the outward soaking from the pool would tend to inhibit an invasion of the cesspool from the outside in this manner.
The defendants also rely heavily on an admission in the Tool Corporation’s bill of particulars that Sovasol vapor as well as sewer gases were about the cesspool at the time of the explosion. This admission, standing alone, does not prove contributory negligence. For example, an unauthorized dumping of this substance in a drain by an employee would account for its presence in the cesspool, but unless it were with the knowledge or consent of the plaintiffs it would not provide a basis for charging them with negligence. Furthermore, it was proved on the trial that the plaintiffs’ established practice for disposing of the used Sovasol was to dump it in a lot across the street.
*732 A considerable part of defendants’ defense was also based upon proving violations of article 3 of tbe Nassau County Fire Commission Ordinance No. 60-1950 by tbe plaintiffs in tbe storage and handling of Sovasol. However, even granted the violations, in view of the more than persuasive proof which precludes accepting the defendants’ theory that this substance entered the pool by way of seepage, there is a total lack of any causal relation between the claimed violations of the ordinance and the subsequent explosion.
I find that the explosion and the resultant damage was caused solely by the negligence of the defendants, and that the plaintiffs were free from any negligence contributing thereto.
The plaintiff Sossner-Lynbrook, Inc., has proved its damages to the realty to the extent demanded in the complaint, and accordingly is awarded judgment in its favor against both defendants, John Butt and Hempstead Cesspool Co., Inc., in the sum of $1,500.
The plaintiff, Sossner Tap & Tool Corporation, has brought its action against Hempstead Cesspool Co., Inc. only. Judgment is granted said plaintiff against the Hempstead Cesspool Co., Inc. in the following amounts: $1,565 as damages to merchandise; $2,262.75’for damages to machinery and fixtures; $1,500 for damages to cesspool and sidewalks; $135 for damage to water service; $275 for damage to fence; making a total of $5,737.75. Any expenditure made for cementing the floor of the garage is disallowed since the evidence shows that at the time of the explosion the garage had a dirt floor.
The findings contained herein constitute the findings in accordance with section 440 of the Civil Practice Act.
Settle judgments on notice.